In the United States District Court
for the Western District of Michigan
Southern Division

---

| | |
|---|---|
| David Pierce, | |
| *On behalf of himself and those similarly situated*, | Case No. |
| Plaintiff, | Judge |
| v. | Magistrate Judge |
| Five Star Pizza Co., Inc.; Deft Brothers, LLC; Gen2 Pizza, LLC; Eric Arntson; Doe Corporation 1-10; John Doe 1-10 | Jury Demand Endorsed Hereon |
| Defendants. | |

---

Class and Collective Action Complaint

---

1.     David Pierce, on behalf of himself and similarly-situated individuals, brings this action against Defendants Five Star Pizza Co., Inc.; Deft Brothers, LLC; Gen2 Pizza, LLC; Eric Arntson; Doe Corporation 1-10; and John Doe 1-10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., M.C.L.A. §408.414, and unjust enrichment.

2.     Defendants operate multiple locations in the State of Michigan ("Defendants' Domino's stores").

3.     Plaintiff seeks to represent the delivery drivers who have worked at the Defendants' Domino's stores.

4.     Defendants repeatedly and willfully violated the Fair Labor Standards Act and M.C.L.A. §408.414 by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

5.     All delivery drivers at the Defendants' Domino's stores, including Plaintiff, have been subject to the same or similar employment policies and practices.

**Jurisdiction and Venue**

6.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

7.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Michigan law claims.

8.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

**Parties**

**Plaintiff**

**David Pierce**

9.     Plaintiff David Pierce is a resident of Michigan.

10.     Plaintiff was an "employee" of all of the Defendants as defined in the FLSA and M.C.L.A. §408.412.

11.    Plaintiff has given written consent to join this action.

**Defendants**

**Five Star Pizza Co., Inc.**

12.    Defendant Five Star Pizza Co., Inc. is a domestic corporation authorized to do business under the laws of Michigan.

13.    Five Star Pizza Co., Inc. is an entity that operates the Defendants' Domino's stores.

14.    Upon information and belief, Five Star Pizza Co., Inc. owns multiple Domino's Pizza stores in Michigan.

15.    Five Star Pizza Co., Inc. was the entity that appeared on Plaintiff's paystubs for work he completed for Defendants' Domino's stores.

16.    Five Star Pizza Co., Inc. had substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

17.    Five Star Pizza Co., Inc. had direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

18.    At all relevant times, Five Star Pizza Co., Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

19.    Five Star Pizza Co., Inc. was and is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and M.C.L.A. §408.412.

20.     At all relevant times, Five Star Pizza Co., Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

21.     Five Star Pizza Co., Inc.'s gross revenue exceeds $500,000 per year.

**Deft Brothers, LLC**

22.     Defendant Deft Brothers, LLC is a domestic limited liability company authorized to do business under the laws of Michigan.

23.     Deft Brothers, LLC is an entity that operates the Defendants' Domino's stores.

24.     Upon information and belief, Deft Brothers, LLC owns multiple Domino's Pizza stores in Michigan.

25.     Deft Brothers, LLC had substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

26.     Deft Brothers, LLC had direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

27.     At all relevant times, Deft Brothers, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

28.     Deft Brothers, LLC was and is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and M.C.L.A. §408.412.

4

29.     At all relevant times, Deft Brothers, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

30.     Deft Brothers, LLC's gross revenue exceeds $500,000 per year.

**Gen2 Pizza, LLC**

31.     Defendant Gen2 Pizza, LLC is a domestic limited liability company authorized to do business under the laws of Michigan.

32.     Gen2 Pizza, LLC is an entity that operates the Defendants' Domino's stores.

33.     Upon information and belief, Gen2 Pizza, LLC owns multiple Domino's Pizza stores in Michigan.

34.     Gen2 Pizza, LLC had substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

35.     Gen2 Pizza, LLC had direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

36.     At all relevant times, Gen2 Pizza, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

37.     Gen2 Pizza, LLC was and is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and M.C.L.A. §408.412.

38.     At all relevant times, Gen2 Pizza, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

39.     Gen2 Pizza, LLC's gross revenue exceeds $500,000 per year.

**Eric Arntson**

40.     Defendant Eric Arntson is the owner of Five Star Pizza Co., Inc. and the Defendants' Domino's stores.

41.     Eric Arntson is the President of Five Star Pizza Co., Inc.

42.     Eric Arntson is the Director of Five Star Pizza Co., Inc.

43.     Eric Arntson is the owner of the Five Star Pizza Co., Inc.

44.     Eric Arntson is a member of Deft Brothers, LLC and Gen2 Pizza, LLC.

45.     Eric Arntson operates multiple Domino's Pizza stores in Michigan.

46.     Eric Arntson is individually liable to the delivery drivers at the Defendants' Domino's stores under the definitions of "employer" set forth in the FLSA and M.C.L.A. §408.412 because he owns and operates the Defendants' Domino's stores, serves as a president, owner, and director of Five Star Pizza Co., Inc., member of Deft Brothers, LLC and Gen2 Pizza, LLC, ultimately controls significant aspects of the Defendants' Domino's stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

47.     Eric Arntson is the franchisee of the Defendants' Domino's stores.

48.     At all relevant times, by virtue of his role as owner, president, and director of the Defendants' Domino's stores, Eric Arntson has had financial control over the operations at each of the Defendants' Domino's stores.

49.     At all relevant times, by virtue of his role as owner, president, and director of the Defendants' Domino's stores, Eric Arntson has a role in significant aspects of the Defendants' Domino's stores' day to day operations.

50.     At all relevant times, by virtue of his role as owner, president, and director of the Defendants' Domino's stores, Eric Arntson has had control over the Defendants' Domino's stores' pay policies.

51.     At all relevant times, by virtue of his role as owner, president, and director of the Defendants' Domino's stores, Eric Arntson has had power over personnel and payroll decisions at the Defendants' Domino's stores, including but not limited to influence of delivery driver pay.

52.     At all relevant times, by virtue of his role as owner, president, and director of the Defendants' Domino's stores, Eric Arntson has had the power to hire, fire and discipline employees, including delivery drivers at the Defendants' Domino's stores.

53.     At all relevant times, by virtue of his role as owner, president, and director of the Defendants' Domino's stores, Eric Arntson has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Domino's stores.

54.     At all relevant times, by virtue of his role as owner, president, and director of the Defendants' Domino's stores, Eric Arntson has had the power to transfer the assets and liabilities of the Defendant entities.

55.     At all relevant times, by virtue of his role as owner, president, and director of the Defendants' Domino's stores, Eric Arntson has had the power to declare bankruptcy on behalf of the Defendant entities.

56.     At all relevant times, by virtue of his role as owner, president, and director of the Defendants' Domino's stores, Eric Arntson has had the power to enter into contracts on behalf of each of the Defendants' Domino's stores.

57.     At all relevant times, by virtue of his role as owner, president, and director of the Defendants' Domino's stores, Eric Arntson has had the power to close, shut down, and/or sell each of the Defendants' Domino's stores.

58.     At all relevant times, by virtue of his role as owner, president, and director of the Defendants' Domino's stores, Eric Arntson had authority over the overall direction of each of Defendants' Domino's stores and was ultimately responsible for their operations.

59.     The Defendants' Domino's stores function for Eric Arntson's profit.

60.     Eric Arntson has influence over how the Defendants' Domino's stores can run more profitably and efficiently.

**Doe Corporation 1-10**

61.     Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of the Defendants' Domino's stores, and qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Domino's stores as that term is defined by the FLSA and Michigan wage law.

62.     Upon information and belief, Eric Arntson owns and/or operates, in whole or in part, a number of other entities that make up part of the Defendants' Domino's Pizza operation.

8

63.     Upon information and belief, the franchisor, Domino's Pizza, may also be liable as an employer of the delivery drivers employed at Defendants' Domino's stores.

64.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

65.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Domino's stores as that term is defined by the FLSA and Michigan wage law.

66.     Upon information and belief, Eric Arntson has entered into co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Domino's stores as that term is defined by the FLSA and Michigan wage law.

67.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**Facts**

**Class-wide Factual Allegations**

68.     During all relevant times, Defendants have operated the Defendants' Domino's stores.

69.     Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers at the Defendants' Domino's stores.

70.     All delivery drivers employed at the Defendants' Domino's stores over the last three years have had essentially the same job duties.

9

71.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Defendants' Domino's stores folding boxes, doing dishes, stocking coolers, mopping and sweeping the floor, take the trash out, preparing food, and completing other duties inside the restaurant as necessary.

72.     Plaintiff and similarly situated delivery drivers have been paid minimum wage or minimum wage minus a tip credit for the hours they worked for Defendants' Domino's stores.

73.     The job duties performed by delivery drivers inside the store are not related to their tip-producing duties while they are out on the road making deliveries.

74.     Delivery drivers do not complete their inside job duties contemporaneously with their delivery job duties.

75.     The delivery drivers at the Defendants' Domino's stores work "dual jobs."

76.     Defendants require delivery drivers at Defendants' Domino's stores to provide cars to use while completing deliveries for Defendants.

77.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

78.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

79.     Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services,

automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

80.     The Defendants' Domino's stores reimbursed their delivery drivers at a per mile rate.

81.     Defendants reimbursed their drivers for their automobile expenses by paying them approximately $.27 per mile.

82.     Defendants' reimbursement payments had no connection to the actual expenses incurred by the delivery drivers.

83.     The Defendants' Domino's stores do not track or record the delivery drivers' actual expenses.

84.     The Defendants' Domino's stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

85.     The Defendants' Domino's stores do not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

86.     The Defendants' Domino's stores do not reimburse their delivery drivers for the actual expenses delivery drivers incur.

87.     The Defendants' Domino's stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

88.     The Defendants' Domino's stores did not reasonably approximate the delivery drivers' expenses.

89.     The Defendants' Domino's stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

90.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

    a.      2019: 58 cents/mile
    b.      2020: 57.5 cents/mile
    c.      2021: 56 cents/mile

91.     The delivery drivers at the Defendants' Domino's stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

92.     As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Michigan law.

93.     Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at the Defendants' Domino's stores.

94.     Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

95.     Defendants have failed to properly take a tip credit from Plaintiffs' wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

96.     Defendants have also failed to properly inform Plaintiff and similarly situated delivery drivers of the requirements for taking a tip credit. 29 C.F.R.§ 531.59.

97.     Defendants have willfully failed to pay federal and Michigan state minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Domino's stores.

98.     Defendants' policy of under-reimbursement unjustly enriches them at the expense of their delivery drivers. Under-reimbursing delivery drivers allows Defendants to shift business expenses onto their employees, which confers various benefits on Defendants beyond and in excess of the direct savings from violating wage laws.

99.     All of Defendants' delivery drivers conferred a benefit on Defendants by providing cellphones to use when delivering pizza and other food items for Defendants.

100.    All of Defendants' delivery drivers conferred a benefit on Defendants by providing vehicles to deliver pizza and other food items for Defendants.

101.    It is unjust for Defendants to retain the benefit conferred on them by their delivery driver by reimbursing only a portion of the business-related costs incurred by the delivery drivers.

102.    Defendants do not provide, and have never provided, the delivery drivers with actual or constructive notice of their rights relating to vehicle expense reimbursement, cell phone expense reimbursement, and wages.

**Plaintiff's Individual Factual Allegations**

103.    Plaintiff worked at Defendants' Domino's store in Mt. Pleasant, Michigan from approximately July 2019 to January 2021.

13

104.    Plaintiff was paid minimum wage minus a tip credit for all hours worked outside of the store.

105.    When Plaintiff was not delivering food, he worked inside the restaurant. His work inside the restaurant included doing dishes, mopping, sweeping, cleaning the restrooms, preparing food, and completing other duties inside the restaurant as necessary.

106.    Plaintiff worked dual jobs.

107.    Plaintiff's inside duties were not related to his delivery duties.

108.    Plaintiff was paid minimum wage for the hours he worked inside the store.

109.    Plaintiff was required to use his own car to deliver pizzas.

110.    Plaintiff was reimbursed a rate of approximately $.27 per mile.

111.    When Defendants began taking a tip credit from Plaintiff's wages, they did not properly inform him of the requirements for taking a tip credit.

112.    When they began taking a tip credit from Plaintiff's wages, Defendants failed to inform Plaintiff of the cash wage he would ostensibly receive pursuant to the tip credit.

113.    When they began taking a tip credit from Plaintiff's wages, Defendants failed to inform Plaintiff of the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of tips actually received by the employee.

114.    When they began taking a tip credit from Plaintiff' wages, Defendants failed to inform Plaintiff that the tip credit shall not apply to any employee who has not been informed of the tip credit requirements stated in 29 C.F.R. § 531.59(b).

115.    Alternatively, Defendants failed to properly take a tip credit from Plaintiff's wages because, after accounting for unreimbursed expenses, Defendants had taken more of a tip credit than they informed Plaintiff they would be taking.

116.    Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

117.    Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

118.    Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incurred cell phone and data charges all for the primary benefit of Defendants.

119.    Defendants did not track the actual expenses incurred by Plaintiff.

120.    Defendants did not ask Plaintiff to provide receipts of the expenses he incurred while delivering pizzas for Defendants.

121.    Defendants did not reimburse Plaintiff based on his actual delivery-related expenses.

122.    Plaintiff was not reimbursed at the IRS standard mileage rate for the miles he drives while completing deliveries.

123.    Defendants did not reimburse Plaintiff based on a reasonable approximation of his expenses.

15

124.    In 2020, for example, the IRS business mileage reimbursement has been $.575 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using the IRS rate as the proper measure of Plaintiff's automobile expenses, every mile driven on the job decreased his net wages by approximately $.305 ($.575 - $.27) per mile. Considering Plaintiff's estimate of about 4.5 miles per delivery, Defendants under-reimbursed him about $1.37 per delivery ($.305 x 4.5 average miles).

125.    Defendants failed to pay Plaintiff minimum wage as required by law.

126.    Defendants have been unjustly enriched by Plaintiff in that he used his own vehicle and incurred vehicle-related expenses for Defendants' benefit.

127.    Defendants have been unjustly enriched by Plaintiff in that he used his own cellphone and incurred cellphone-related expenses for Defendants' benefit.

**Collective Action Allegations**

128.    Plaintiff brings the First and Second Counts on behalf of himself and all similarly situated current and former delivery drivers employed at the Defendants' Domino's stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

129.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and

16

failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

130. Defendants' unlawful conduct is pursuant to a company policy or practice.

131. Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked, time and a half overtime wages for hours worked in excess of 40 per week, and to fully reimburse for "tools of the trade."

132. Defendants are aware or should have been aware that they were obligated to actually pay the tipped wage rate that they informed Plaintiff and other delivery drivers that they would pay.

133. Defendants' unlawful conduct has been widespread, repeated, and consistent.

134. The First and Second Counts are properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

135. The FLSA Collective members are readily identifiable and ascertainable.

136. In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

**Class Action Allegations**

137. Plaintiff brings the Third and Fourth Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Domino's stores in the State of Michigan between the date three years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Michigan Wage Class").

17

138.    Plaintiff brings the Fifth Count under Federal Rule of Civil procedure 23, on behalf of himself and a class of person consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Domino's stores in Michigan between the date six years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Michigan Unjust Enrichment Class").

139.    Excluded from the Rule 23 Michigan Wage Class and Rule 23 Michigan Unjust Enrichment Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Michigan Wage Class and/or Rule 23 Michigan Unjust Enrichment Class.

140.    The number and identity of the Rule 23 Michigan Wage Class members and Rule 23 Michigan Unjust Enrichment Class members are ascertainable from Defendants' records.

141.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Michigan Wage Class member are determinable from Defendants' records.

142.    The benefits conferred by the Rule 23 Michigan Unjust Enrichment Class members and realized by Defendants are determinable from Defendants' records.

143.    For the purpose of notice and other purposes related to this action, the Rule 23 Michigan Wage Class members and Rule 23 Michigan Unjust Enrichment Class members' names

and contact information are readily available from Defendants.

144.     Notice can be provided by means permissible under Rule 23 for the Rule 23 Michigan Wage Class members and the Rule 23 Michigan Unjust Enrichment Class members.

145.     The Rule 23 Michigan Wage Class members and Rule 23 Michigan Unjust Enrichment Class members are so numerous that joinder of all members is impracticable.

146.     The disposition of the Rule 23 Michigan Wage Class members and Rule 23 Michigan Unjust Enrichment Class members' claims as a class will benefit the parties and the Court.

147.     There are more than 50 Rule 23 Michigan Wage Class members.

148.     There are more than 50 Rule 23 Michigan Unjust Enrichment Class members.

149.     Plaintiff's claims are typical of those claims which could be alleged by any class member in either the Rule 23 Michigan Wage Class members and Rule 23 Michigan Unjust Enrichment Class, and the relief sought is typical of the relief which would be sought by each Rule 23 Michigan Wage Class members and Rule 23 Michigan Unjust Enrichment Class member in separate actions.

150.     Plaintiff and the Rule 23 Michigan Wage Class members and Rule 23 Michigan Unjust Enrichment members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to properly claim a tip credit, failing to pay overtime, failing to reimburse for expenses, taking unauthorized deductions, failing to pay earned wages, and being unjustly enriched by the drivers.

151.     Plaintiff and the Rule 23 Michigan Wage Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the M.C.L.A. §408.414.

152.     Plaintiff and the Rule 23 Michigan Unjust Enrichment Class members have also unjustly enriched Defendants in the same way—by providing automobiles for use in their business at no cost to Defendants.

153.     Plaintiff and the Rule 23 Michigan Wage Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

154.     Plaintiff and the Rule 23 Michigan Unjust Enrichment Class sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures

155.     By seeking to represent the interests of the Rule 23 Michigan Wage Class members and Rule 23 Michigan Unjust Enrichment Class members, Plaintiff is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

156.     Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Michigan Wage Class and Rule 23 Michigan Unjust Enrichment Class and has no interests antagonistic to the Rule 23 Michigan Wage Class.

157.     Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

158.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that

numerous individual actions engender.

159.     Upon information and belief, Defendants and other employers throughout the state violate Michigan wage law.  Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

160.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

161.     The Rule 23 Michigan Wage Class and the Rule 23 Michigan Unjust Enrichment Class are properly treated as subclasses pursuant to Rule 23(c)(5).

162.     Common questions of law and fact exist as to the Rule 23 Michigan Wage Class that predominate over any questions only affecting Plaintiff and the Rule 23 Michigan Wage Class members individually and include, but are not limited to:

     a.     Whether Plaintiff and the Rule 23 Michigan Wage Class members were subject to a common expense reimbursement policy;

     b.     Whether Plaintiff and the Rule 23 Michigan Wage Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

     c.     Whether Plaintiff and the Rule 23 Michigan Wage Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

     d.     Whether Defendants failed to reimburse automobile expenses, gasoline expenses, and other job-related expenses, as described herein, causing

Plaintiff and the Rule 23 Michigan Wage Class wages to drop below legally allowable minimum wage and overtime;

e.  Whether Defendants collected and maintained records of Plaintiff and the Rule 23 Michigan Wage Class members' actual vehicle expenses;

f.  Whether Defendants properly reimbursed Plaintiff and the Rule 23 Michigan Wage Class members for their vehicle expenses;

g.  Whether Defendants met the requirements for claiming a tip credit from the wages of the Plaintiff and the Rule 23 Michigan Wage Class members;

h.  Whether Defendants failed to pay Plaintiff and the Rule 23 Michigan Wage Class all wages earned by them;

i.  Whether Plaintiff and the Rule 23 Michigan Wage Class members were subject to a common policy that required them to provide cellphones to use when completing deliveries for Defendants; and

j.  Whether Plaintiff and the Rule 23 Michigan Wage Class members were subject to a common cellphone expense reimbursement policy;

k.  The nature and extent of class-wide injury and the measure of damages for those injuries.

163.  Common questions of law and fact exist as to the Rule 23 Michigan Unjust Enrichment Class that predominate over any questions only affecting Plaintiff and the Rule 23 Michigan Unjust Enrichment Class members individually and include, but are not limited to:

a.  Whether Plaintiff and the Rule 23 Michigan Unjust Enrichment Class members were subject to a common policy that required them to provide cars to complete deliveries for Defendants;

b.  Whether Plaintiff and the Rule 23 Michigan Unjust Enrichment Class members were subject to a common automobile expense reimbursement policy;

c.  Whether Plaintiff and the Rule 23 Michigan Unjust Enrichment Class members were subject to a common policy that required them to provide cellphones to use when completing deliveries for Defendants;

22

d.  Whether Plaintiff and the Rule 23 Michigan Unjust Enrichment Class members were subject to a common cellphone expense reimbursement policy;

e.  Whether Plaintiff and the Rule 23 Michigan Unjust Enrichment Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

f.  Whether Defendants avoided business expenses they would have otherwise been required to cover but for Plaintiff and the Rule 23 Michigan Unjust Enrichment Class providing cars and cellphones to use to make deliveries;

g.  How much it would have cost Defendants to operate their business but for Plaintiff and the Rule 23 Michigan Unjust Enrichment Class providing cars and cellphones to use to make deliveries;

h.  Whether Plaintiff and the Rule 23 Michigan Unjust Enrichment Class conferred a benefit on Defendants that Defendants were aware of;

i.  Whether Defendants accepted the benefits conferred on them by Plaintiff and the Rule 23 Michigan Unjust Enrichment Class;

j.  Whether it would be unjust for Defendants to retain the benefit conferred on them by Plaintiff and the Rule 23 Michigan Unjust Enrichment Class without compensating for it;

k.  The nature and extent of class-wide injury and the measure of damages for those injuries.

164.  In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Michigan Wage Class and the Rule 23 Michigan Unjust Enrichment Class, Plaintiff will request payment of a service award upon resolution of this action.

**Causes of Action**

**Count 1**
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

23

165.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

166.    Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

167.    Defendants failed to properly claim a tip credit from the wages of Plaintiff and the FLSA collective because Plaintiff and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

168.    Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

169.    Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

170.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

171.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

172.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Overtime Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

24

173.   Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

174.   Plaintiff and the FLSA collective class members are or were non-exempt, hourly employees entitled to receive no less than time and a half overtime wages for hours worked in excess of 40 hours per week.

175.   Defendants required and continue to require Plaintiff and the FLSA collective class members to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Plaintiff and the FLSA collective class members for said expenses.

176.   When Plaintiff and the FLSA collective class members worked in excess of forty hours in a workweek, they were under-reimbursed in the same way and according to the same policies as they were when they worked regular hours.

177.   When Plaintiff and the FLSA collective class members worked in excess of forty hours in a workweek, Defendants failed to calculate their overtime rate at no less than time and one half of the minimum wage.

178.   By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA collective class members.

179.   Plaintiff and the FLSA collective class members have been damaged by Defendants' willful failure to pay overtime as required by law.

180.   As a result of Defendants' willful violations, Plaintiff and the FLSA collective class members are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 3**
**Failure to Pay Minimum Wages - M.C.L.A. §408.414**
**(On Behalf of Plaintiff and the Rule 23 Michigan Wage Class)**

181.    Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

182.    Defendants paid Plaintiff and Rule 23 Michigan Wage Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

183.    The Michigan Workforce Opportunity Wage Act, M.C.L.A. §408.411, *et seq.* requires that employers be paid not less than minimum wage as determined by an inflation index ($9.65/hour in 2021) for all hours worked.

184.    Because Defendants required Plaintiff and the Rule 23 Michigan Wage Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed to pay Plaintiff and Rule 23 Michigan Wage Class minimum wage.

185.    By not paying Plaintiff and Rule 23 Michigan Wage Class at least minimum wage for each hour worked, Defendants have violated M.C.L.A. §408.414.

186.    As a result of Defendants' violations, Plaintiff and Rule 23 Michigan Wage Class are entitled to damages, including, but not limited to unpaid wages, unreimbursed expenses, an additional one times unpaid wages/unreimbursed expenses in liquidated damages, costs, and attorney fees pursuant to M.C.L.A. §408.419.

**Count 4**
**Failure to Pay Overtime Wages - M.C.L.A. §408.414a**
**(On Behalf of Plaintiff and the Rule 23 Michigan Wage Class)**

187.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

188.    Plaintiff and the Rule 23 Michigan Wage Class are or were non-exempt, hourly employees entitled to receive no less than time and a half overtime wages for hours worked in excess of 40 hours per week.

189.    Defendants required and continue to require Plaintiff and the Rule 23 Michigan Wage Class to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Plaintiff and the Rule 23 Michigan Wage Class for said expenses.

190.    When Plaintiff and the Rule 23 Michigan Wage Class worked overtime hours, they were under-reimbursed in the same way and according to the same policies as they were when they worked regular hours.

191.    By the acts and conduct described above, Defendants willfully violated the provisions of M.C.L.A. §408.414a and disregarded the rights of Plaintiff and the Rule 23 Michigan Wage Class.

192.    Plaintiff and the Rule 23 Michigan Wage Class have been damaged by Defendants' willful failure to pay overtime as required by law.

193.    As a result of Defendants' willful violations, Plaintiff and the Rule 23 Michigan Wage Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees

**Count 5**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Rule 23 Michigan Unjust Enrichment Class)**

27

194.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

195.    Plaintiff and the Rule 23 Michigan Unjust Enrichment Class have conferred a benefit upon Defendants, namely, providing and maintaining "tools of the trade" for Defendants' benefit.

196.    The "tools of the trade" include vehicles, insurance for those vehicles, and cellphones.

197.    Defendants knew that Plaintiff and the Rule 23 Michigan Unjust Enrichment Class conferred that benefit on Defendants.

198.     As described above, Defendants received benefits as a result of Plaintiff and the Rule 23 Michigan Unjust Enrichment Class providing and maintaining "tools of the trade."

199.    The benefits include, but are not limited to, direct and indirect financial benefits like increased profits and increased ability to compete on the price of Defendants' products.

200.    Defendants did not compensate or under-compensated Plaintiff and the Rule 23 Michigan Unjust Enrichment Class for these benefits.

201.    Accordingly, an inequity would result to Plaintiff and Rule 23 Michigan Unjust Enrichment Class because of the retention of this benefit by Defendants.

202.    As a result of Defendants having been unjustly enriched, Plaintiff and the Rule 23 Michigan Unjust Enrichment Class are entitled to compensation for the value of the benefit Plaintiff and the Rule 23 Michigan Unjust Enrichment Class conferred on Defendants.

**WHEREFORE**, Plaintiff David Pierce prays for all of the following relief:

A.     Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.     Unpaid minimum wages, overtime wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.     Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.     Designation of Plaintiff as representative of the Rule 23 Michigan Wage Class and Rule 23 Michigan Unjust Enrichment Class and counsel of record as Class Counsel for both Classes.

E.     An award of damages under M.C.L.A. §408.419, based on Defendants' failure to pay minimum wages, calculated as an additional one time of back wages as liquidated damages, attorneys' fees, and costs.

F.     An award of restitution as a result of unjust enrichment.

G.     An award of prejudgment and post-judgment interest.

H.     An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

I.     Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Bradley K. Glazier*
Bradley K. Glazier (P35523)
Robert M. Howard (P80740)
BOS & GLAZIER, P.L.C.
990 Monroe Avenue, N.W.
Grand Rapids, MI 49503
Telephone: (616) 458-6814
Email: *bglazier@bosglazier.com*

and

Andrew R. Biller
Andrew P. Kimble
Emily A. Hubbard
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45209
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*ehubbard@billerkimble.com*

*Counsel for Plaintiff  and the putative class*

## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all

issues herein triable to a jury.

*/s/ Bradley K. Glazier*
Bradley K. Glazier